IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEL CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 14-377-LPS |
| | : | REDACTED - PUBIC |
| FUTURE LINK SYSTEMS, LLC, | : | VERSION |
| | : | |
| Defendant. | : | |

Jack B. Blumenfeld, Maryellen Noreika, Jeremy A. Tigan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Adam Alper, Sarah E. Piepmeier, Akshay S. Deoras, KIRKLAND & ELLIS LLP, San Francisco, CA

Michael W. De Vries, Christopher M. Lawless, Kevin D. Bendix, Benjamin A. Herbert, KIRKLAND & ELLIS LLP, Los Angeles, CA

Gregory S. Arovas, Jon R. Carter, KIRKLAND & ELLIS LLP, New York, NY

Lien K. Dang, Eric B. Cheng, KIRKLAND & ELLIS LLP, Palo Alto, CA

David Rokach, KIRKLAND & ELLIS LLP, Chicago, IL

    Attorneys for Plaintiff Intel Corporation.


Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE

Morgan Chu, Benjamin W. Hattenbach, Ellisen S. Turner, Richard W. Krebs, Amy E. Proctor, Dominik Slusarczyk, Molly Russell, IRELL & MANELLA LLP, Los Angeles, CA

    Attorneys for Defendant Future Link Systems, LLC.

**MEMORANDUM OPINION**

June 1, 2017
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court are five summary judgment and *Daubert* motions. This Memorandum Opinion addresses two of the pending motions: (1) Intel Corporation's ("Intel") motion to exclude reasonable royalty opinions of Future Link Systems, LLC's ("Future Link" or "FLS") damages experts (D.I. 525); and (2) Future Link's motion to preclude expert testimony (D.I. 526). Briefing for these motions was completed on April 10, 2017 and the Court heard oral argument on April 25, 2017. For the reasons discussed below, the Court will deny both motions.[1]

I.  **LEGAL STANDARD**

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Rule 702(a) requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

There are three distinct requirements for proper expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the opinion must relate to the facts. *See*

---

[1]This Memorandum Opinion addresses only Intel's motion to exclude reasonable royalty opinions and the portions of Future Link's motion to preclude expert testimony that relate to Intel experts Drs. Gregory Leonard and Douglas Clark. The Court's decisions regarding the remaining aspects of Future Link's motion, along with the parties' summary judgment motions, will be forthcoming.

*Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

## II. DISCUSSION

### A. Intel's Motion to Exclude Reasonable Royalty Opinions of Future Link's Damages Experts

Intel seeks to exclude the reasonable royalty opinions of Future Link experts, Mr. Mark Chandler and Dr. Ryan Sullivan, asserting that they failed to apportion between patented and unpatented technologies in the accused products. (D.I. 527 at 1) Mr. Chandler opined that Intel should pay $6.16 billion for alleged infringement of six of the 14 asserted patents, while Dr. Sullivan opined that Intel should pay $3.78 billion for alleged infringement of the remaining eight asserted patents. (*Id.*)

#### 1. Mr. Chandler

Intel asserts that Mr. Chandler did not engage in any technical apportionment in calculating his proposed reasonable royalty, but instead applied a ▮▮▮▮▮▮▮▮▮▮ – based on four non-comparable licenses – to the entire market value of each of the accused Intel products for each allegedly infringed patent. (D.I. 527 at 7-10) Furthermore, Intel argues that Mr. Chandler failed to provide any evidence that the infringing aspects of the accused products drove consumer demand, so the entire market value rule is not applicable. (*Id.*)

Future Link responds that, contrary to Intel's assertions, Mr. Chandler explained how application of the ▮▮▮▮▮▮▮▮▮▮ was the product of analysis of comparable licenses that used the same rate. (D.I. 554 at 15-16) Future Link argues that the Federal Circuit has approved the methodology of calculating a reasonable royalty rate based on comparable licensing negotiations without performing a separate apportionment analysis on the smallest saleable unit. (*Id.* at 18)

2

(citing *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1300-03 (Fed. Cir. 2015)) In comparing the licenses here, Mr. Chandler showed that: (1) the reference patents subject to ▮▮▮ were ▮▮▮▮▮▮; (2) the licensor of the reference patents, ▮▮▮▮▮▮▮ ▮▮▮▮▮ and (3) the licensed patents had "extraordinarily similar technology" to the technology of the patents being asserted here (*Id.* at 15-16) Mr. Chandler also identified indicia of economic comparability between the comparable license agreements and the hypothetical licenses involved here, as well as any effect of alleged differences between them. (*Id.* at 16) Lastly, Mr. Chandler conducted a detailed *Georgia-Pacific* analysis to determine whether any adjustments needed to be made to the ▮▮▮. (*Id.* at 20) Future Link argues, therefore, that Mr. Chandler's method and application of it are reliable and that Intel's criticisms of his analysis are proper subjects for cross-examination at trial. (*Id.* at 20-21)

The Court agrees with Future Link that Mr. Chandler's method is consistent with the Federal Circuit's approved methodology for valuing asserted patents based on comparable licenses. *See Commonwealth*, 809 F.3d at 1303. "Such a model begins with rates from comparable licenses and then accounts for differences in the technologies and economic circumstances of the contracting parties." *Id.* (internal citation and quotation marks omitted). Furthermore, the Federal Circuit has made clear that because damages models are fact-dependent, "a distinct but integral part of the admissibility inquiry is whether the data utilized in the methodology is sufficiently tied to the facts of the case." *Id.* at 1302 (citing *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)). Mr. Chandler's methodology here meets that requirement. Whether the prior license agreements Mr. Chandler relied on are

sufficiently comparable to support his proposed reasonable royalty is a factual issue best addressed by examination, including cross-examination, at trial. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("The degree of comparability of the . . . license agreements as well as any failure on the part of . . . [the] expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion.").

The Court will deny Intel's motion with respect to Mr. Chandler.

### 2. Dr. Sullivan

Intel asserts that Dr. Sullivan failed to conduct any technical apportionment, instead relying on inputs from other FLS technical experts, Drs. Johnson and Annavaram, who also failed to include any apportionment in their analyses. (D.I. 527 at 12-13) Drs. Johnson and Annavaram, Intel argues, only analyzed entire product features as a whole, "rather than limiting their analyses to the technologies within those features allegedly covered by the asserted claims." (*Id.* at 14) Furthermore, Intel argues that Dr. Johnson's reliance on an FLS infringement expert, Dr. Mangione-Smith, cannot salvage Dr. Johnson's opinion because Dr. Mangione-Smith also did not satisfy the apportionment requirement in his analysis. (*Id.* at 16)

Future Link concedes that Dr. Sullivan did not conduct a technical apportionment analysis, but insists that extensive technical apportionment was performed by FLS infringement experts – Drs. Conte, Brogioli, and Mangione-Smith – and the opinions of each of those experts were the starting points for Dr. Sullivan's analysis. (D.I. 554 at 5) Drs. Conte, Brogioli, and Mangione-Smith "analyzed the claims, applied them to Intel's products, and determined what features infringe and how those features compare to nonaccused technologies," thereby "conduct[ing] the very apportionment Intel claims is lacking." (*Id.*) Future Link asserts that the

4

law supports this apportionment methodology; i.e., calculating the benefit provided by alleged infringing features by comparing them to non-infringing alternatives. (*Id.* at 6) (citing *Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014) *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("[T]here may be more than one reliable method for estimating a reasonable royalty. For example, a party may . . . estimate the value of the benefit provided by the infringing features by . . . comparing the accused product to non-infringing alternatives.")). Here, Dr. Annavaram conducted tests comparing the infringing Intel products to non-infringing alternatives, and then Drs. Conte and Brogioli determined that Dr. Annavaram's analysis was properly apportioned to just the asserted claims, providing claim charts and explanations of Dr. Annavaram's tests. (*Id.* at 6-7)[2] As Dr. Sullivan is an economist, FLS argues that his reliance on inputs from the various technical and infringement experts is appropriate, in accordance with the law, and effectively apportions. (*Id.* at 11-12) (citing *Apple*, 757 F.3d at 1321)

The Court finds Dr. Sullivan's methodology to be sufficiently reliable. Dr. Sullivan's methodology focused on incremental benefits of the patented inventions (identified by FLS's infringement experts and quantified by FLS's technical experts) and further apportioned based on revenue, cost, commercialization, and rate of return – none of which Intel objects to. (D.I. 554 at 3 n.3) As Dr. Sullivan's opinion was based on the reasonable opinions of other FLS technical and infringement experts, his opinion properly accounted for apportionment. Intel's arguments

---

[2] FLS provides the same argument for Dr. Sullivan's analysis of a separate group of patents based on the opinions of Drs. Johnson and Mangione-Smith, explaining that Dr. Johnson's analysis, on which Dr. Sullivan's opinion is based, was examined by Dr. Mangione-Smith, who ensured that Dr. Johnson's analysis was properly apportioned. (D.I. 554 at 8-11)

5

are better-suited for cross-examination. Hence, the Court will deny Intel's motion.

### B. Future Link's Motion to Preclude Expert Testimony

#### 1. Drs. Leonard and Clark

Intel's apportionment analysis begins with its expert Dr. Gregory Leonard, who examined the accused Intel chip products and who, through a series of four steps, excluded value that was unrelated to the accused features. (D.I. 558 at 5) In the first and second steps, Dr. Leonard excluded value associated with Intel chip technology that was unrelated to the allegedly infringing features, such as technologies related to chip manufacturing, fabrication, and packaging. (*Id.* at 5-6) To do this, Dr. Leonard reviewed Intel research and development data to determine the relative amounts of R&D investments for categories of technology unrelated to alleged infringement (i.e., chip manufacturing) compared to investments for categories covering accused features (i.e., architectural features). (*Id.* at 6; Hr'g Tr. at 31) This data allowed Dr. Leonard to produce percentage values for each chip product, delineating which features should be excluded and which should be analyzed further. (*Id.*)

In the third step, Dr. Leonard further apportioned the data by excluding categories of technology within the accused products that were attributable to other Intel technologies not accused of infringement. (*Id.* at 7) Dr. Leonard accomplished this step by separating the categories of products containing accused features into different "technology buckets" – which Intel asserts "correspond[ ] to a technology area that contain[s] particular features accused of infringing each of the patents" and represent the technical categories that Future Link uses in evaluating the accused features. (*Id.*; *see also* Hr'g Tr. at 32-33) Then Dr. Leonard performed a forward citation analysis. In his forward citation analysis, Dr. Leonard valued technologies "by

6

comparing the number of times the FLS patents-in-suit are cited as prior art with the number of such citations for Intel patents that correspond to Intel technologies within the same technology buckets as the patents-in-suit." (D.I. 558 at 7) To ascertain which of Intel's own patents corresponded to Intel technology within the "technology buckets," Dr. Leonard relied on another Intel expert, Dr. Douglas Clark. (*Id.*) Dr. Clark identified, analyzed, and assigned to the "technology buckets" 163 different Intel patents – selected from over 30,000 Intel patents – based on their relation to the patent classification codes and technologies in the Future Link patents and based on their actual implementation in Intel products. (*Id.* at 4, 7-8; Hr'g Tr. at 35-36) Dr. Leonard then measured the value of aspects of the accused products represented by the 163 Intel patents identified by Dr. Clark and then compared that value to aspects of the accused products allegedly covered by the FLS patents-in-suit. (D.I. 558 at 7-8)

In the fourth and final step, Dr. Leonard applied the value shares from his forward citation analysis to profits for the accused products, thereby, according to Intel, properly apportioning the profits attributable to specific accused features. (*Id.* at 9)

Future Link argues that fundamental problems exist with regard to Dr. Clark's and Dr. Leonard's analyses, resulting in an apportionment that improperly deducts value attributable to Future Link's patents, mistakenly attributing this value to Intel's "decades-old portfolio." (D.I. 528 at 3) Specifically, Future Link asserts that the apportionment analyses are defective because they (1) compare the accused features of Intel's products to 163 Intel patents, without ever confirming that the Intel products in question practice any claims of those 163 patents, and (2) improperly apply a forward citation analysis valuing the Future Link patents relative to Intel patents assigned to the various "technology buckets." (D.I. 528 at 3-4)

7

In particular, Future Link argues that Dr. Clark's analysis failed to properly construe the 163 patents he mapped to the various technology buckets, as he "did not compare the claims of any the 163 patents he discusses in his report with any Intel product, let alone any accused product." (*Id.* at 6-7) Because construing claims and doing an element-by-element comparison is a prerequisite for mapping any of the claims to various "technology buckets," Future Link asserts that Dr. Clark is unable to testify about whether any of the 163 patents are actually embodied in any Intel product. (*Id.* at 7) In addition, Dr. Clark did not assign each patent as a whole to a technology bucket, but instead assigned the "subject matter" of the patents to the technology buckets by comparing the subject matter to "Intel technology," technology which Future Link asserts "does not align with any meaningful precision to the Intel products actually relevant to this case." (*Id.* at 8-9) Future Link contends that Dr. Clark failed to document his methodology in a manner that allows others to test his assertions – which Dr. Clark acknowledged during his deposition. (*Id.* at 10) Lastly, Dr. Clark was "impermissibly disconnected from the creation of his report," as it was prepared entirely by others at Elysium, a company that contracted with Dr. Clark for the provision of expert testimony. (*Id.* at 11) In Future Link's view, then, Dr. Clark "did not himself identify the 163 Intel patents," and "did not know who actually selected those patents." (*Id.*)

Next, Future Link argues that Dr. Leonard's testimony is based solely on Dr. Clark's subjective assessment of the correspondence between the 163 Intel patents and "Intel technology." (*Id.* at 13) Dr. Leonard evaluated Dr. Clark's analysis as though Dr. Clark had completed an element-by-element analysis of at least one claim of each of the 163 patents – but Dr. Clark admitted he never did so. (*Id.*) Future Link also contends that Dr. Leonard (and Dr.

8

Clark) failed to consider existing overlap between the Intel patents and the Future Link patents, or among the 163 Intel patents. (*Id.* at 17) In addition, not one Intel expert ever opined on whether the "technology buckets" "actually fully contain the accused technologies for each of Future Link's patents." (*Id.* at 20) Future Link also attacks Dr. Leonard's application of forward citation analysis, arguing that such an analysis has only been recognized, under limited circumstances, as a way to value *patents*, not *product features*. (*Id.* at 21) Lastly, Future Link contests Dr. Leonard's research and development apportionment in stages 1 and 2, arguing that it suffers from reliance on the "technology buckets" and is based on the wrong time period. (*Id.* at 22-23)

Intel responds that the apportionment method applied by Drs. Leonard and Clark is "sufficiently reliable to satisfy *Daubert*" and that Future Link's criticisms go to the weight, not admissibility, of their opinions. (D.I. 558 at 9-11) First, Intel argues that the five "technology buckets" its experts rely on were created in response to FLS's infringement contentions; each bucket represents a different category of technology that Future Link accused of infringement, including IOSF, PCI Express, QPI, Power Management, and Memory Control. (Hr'g Tr. at 32-33) Similarly, Intel asserts that there is no merit "to FLS's speculation that the 'technology buckets' at issue may not include the accused features," ███████████████████████████ ███████████████████████████████████████ (D.I. 558 at 16-17) Next, because "[f]orward citations are based on citations to the *disclosures* of the patent as a whole, not citations to specific *claims*, or determinations whether the claims are implemented in the accused products," Intel asserts that Dr. Leonard properly relied on the Intel patent disclosures, rather than performing an element-by-element analysis of the claims. (*Id.* at 11-12) Regarding patent

9

overlap, Intel argues that Dr. Leonard's forward citation analysis addresses any such overlap because "Dr. Leonard evaluated the *relative* value of the subject matter of particular patents based upon analysis of citations by other patents, which accounts for the relative value of all features at issue." (*Id.* at 14) Finally, Intel insists that no temporal disconnect exists in Dr. Leonard's apportionment analysis and that Dr. Clark's opinions are the result of his own work, with the assistance of others acting under his direction. (*Id.* at 19-21)

The Court finds the apportionment analyses of Drs. Clark and Leonard to be sufficiently reliable. The Federal Circuit has made clear that there is no single, exacting way to conduct an apportionment analysis, since "damages models are fact-dependent." *Commonwealth*, 809 F.3d at 1301 ("[U]nder this apportionment principle, there may be more than one reliable method for estimating a reasonable royalty."); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("The essential requirement [for an apportionment analysis] is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the product."). The Intel experts here went through various steps, each tied to the facts of the case and technology at issue. In cases where a forward citation analysis has been found unreliable, it was because the expert failed to "tie the methodology to the facts" (e.g., failed to account for all citations to reissue and predecessor patents). *See Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4272870, at *8 (N.D. Cal. July 14, 2015); *Oracle Am., Inc. v. Google Inc.*, 2012 WL 877125, at *2 (N.D. Cal. Mar. 15, 2012).

Each of Future Link's concerns go to the weight of Drs. Leonard and Clark's testimony, not its admissibility. The Court will, therefore, deny Future Link's motion.

### 2. Unverified and Undisclosed Intel Employees[3]

Future Link asserts that Dr. Leonard relies on improperly withheld facts and unverified information from undisclosed Intel employees Robert Rainbolt, Terri Schmiesing, and Patricio De La Rocha. (D.I. 528 at 36-37) Future Link contends that Dr. Leonard improperly relies on Mr. Rainbolt to support his determination of "the amount of investment related to a smaller set of high-level features, or technology buckets, of which the Patents-in-Suit are allegedly components." (*Id.* at 37) Not only was Mr. Rainbolt never disclosed, Future Link argues, but Dr. Leonard also testified that he is unaware of Mr. Rainbolt's technical expertise, whether Mr. Rainbolt reviewed the patents-in-suit, or what the basis is for Mr. Rainbolt's understanding of Intel's research and development expenses. (*Id.*) Similarly, Future Link asserts that Dr. Leonard relies on undisclosed Intel employees Terri Schmiesing and Patricio De La Rocha for his understanding of Intel's research and development data and processes, which Future Link contends is "a necessary base of [Dr. Leonard's] conclusions." (*Id.* at 37-38)

Intel responds that Dr. Leonard relied on sufficient facts and data to support his conclusions independent of the undisclosed witnesses. (D.I. 558 at 40) Intel argues it is unclear exactly which opinions FLS seeks to exclude; further, under Fed. R. Ev. 702 and 703, experts are permitted to rely on employee interviews (even if undisclosed) to support their own opinions, so long as those types of opinions are reasonably applied or relied upon in their field. (*Id.* at 39-40; *see also Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 442 (D. Del. 2007)) In Intel's view, this is what Dr. Leonard did here – in addition to reviewing Intel's

---

[3]With respect to the issue of unverified and undisclosed employees, this Memorandum Opinion solely addresses the portions of Future Link's motion related to Dr. Leonard's analysis. The remaining arguments related to undisclosed Intel employees will be addressed at a later time.

research and development investment data, identifying supporting studies, and citing interviews and deposition testimony of multiple Intel witnesses. (*Id.* at 40) Finally, in Intel's view, no facts on which Dr. Leonard relied were "withheld" from FLS, as Intel provided a corporate witness for deposition on this information. (*Id.* at 40-41)

While it can be inappropriate for an expert to rely on statements from individuals employed by a litigant who are not disclosed by the litigant, are not subject to deposition, and cannot be called as witnesses at trial, *see generally Yodlee, Inc. v. Plaid Tech. Inc.*, 2017 WL 466358, at *2 (D. Del. Jan. 27, 2017), here Dr. Leonard supported his opinions independent of any information he may have derived from such Intel employees. Moreover, Future Link appears to know who each of the undisclosed employees are and has sufficient time before trial to depose them, should Future Link wish to do so. The Court will, therefore, deny Future Link's motion to exclude these portions of Dr. Leonard's testimony.

### III. CONCLUSION

For the reasons stated above, the Court will deny Intel's and Future Link's motions to exclude each others' damages experts' opinions. In a subsequent opinion or opinions, the Court will address the remaining outstanding motions. An appropriate order follows.