IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEL CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 14-377-LPS |
| FUTURE LINK SYSTEMS, LLC, | : | |
| Defendant. | : | |

## MEMORANDUM ORDER

More than a dozen patents[1] are asserted in this highly complex, highly contentious litigation. Declaratory judgment plaintiff Intel Corporation ("Intel") filed this action in March 2014, seeking judgments of non-infringement and invalidity in relation to nine patents owned by Future Link Systems, LLC ("FLS"). (D.I. 1) In July 2015, after extensive motions practice, FLS filed counterclaims for infringement against Intel on 15 patents. (*See* D.I. 135) Fact and expert discovery relating to all of the patents-in-suit is complete.

The Court has set aside six trial days in September during which the parties will begin to present their disputes to a jury. The issue addressed here is: what should be tried first?

The Court has considered doing something unusual: trying damages only, to determine the value of this case should FLS ultimately be able to prove that all of Intel's accused products infringe all of FLS's asserted claims, to the full extent alleged by FLS, and that none of those claims are invalid. Earlier this month, after denying both parties' motions to preclude testimony

---

[1] At times up to 17 patents have been involved, though most recently it appears that the parties have narrowed their disputes to "just" 12 or 14 patents. (*See* D.I. 1; D.I. 555 at 1; D.I. 639 at 20)

1

from the other party's damages experts, the Court indicated that it was inclined to try this approach.[2] The Court arrived at this inclination after conducting a hearing on the parties' multiple summary judgment and *Daubert* motions at which the parties used nearly all of their time solely on damages issues, and based on the strikingly different valuations the parties' experts have put on this case. FLS contends that it is entitled to approximately **$10 billion** in reasonable royalties, while Intel counters that (assuming it is found to infringe valid patents, which it denies) it is liable only for around $10 million, a disparity of about **1000 times**.

The Court solicited and received the parties' input on what the trial should involve. Unsurprisingly, the parties could not agree. FLS urges the Court to adhere to its previously-stated inclination and use "reverse bifurcation" to conduct a damages-only trial on six of the FLS patents. Intel prefers, instead, that the Court follow the well-worn path in other oversized patent cases and conduct a "bellwether" trial on liability and damages relating to just three patents. After receiving the parties' extensive input[3], and upon further reflection, the Court agrees with Intel and will adopt the "bellwether" trial approach.

A three-patent liability and damages trial will have the virtue of giving the parties a near-

---

[2]On July 10, 2017, the Court advised the parties that it was "considering using the first trial solely to obtain a verdict on the parties' competing damages theories, on the assumption that all asserted patents are valid and infringed by all accused products." (D.I. 631)

[3]The Court received a detailed status report from the parties on July 18 (D.I. 635), conducted a lengthy teleconference with the parties on July 21, and then received more than 50 additional pages of input in the form of competing status reports the Court ordered (D.I. 638, 639), which provided detail on how the parties envisioned the "damages only" and "bellwether" trial alternatives.

term opportunity to obtain certainty – in this Court, and then on appeal[4] – as to the value of a substantial subset of their disputes. Intel contends, without contradiction from FLS, that the value FLS has placed on the infringement case relating to the three patents to be tried (the '302, '888, and '804 patents)[5] is *$2.9 billion* – hardly a small amount, and approximately one-third of the value FLS has placed on this entire massive case. Whether this case will ever be amenable to settlement is an open question, but the Court believes that obtaining clarity on the value of one-third (even a non-representative one-third, if that is what it is) of the case is at least as likely to promote settlement as would an advisory damages verdict on the entirety of the case.

And an "advisory damages verdict" is almost certainly all that could be accomplished by a reverse bifurcation damages-only trial. At such a trial, the jury would have to be instructed to *assume* that each of the asserted claims of each of the asserted patents is infringed and not invalid, and further that each of the accused features on each of the accused products is infringing to the full extent alleged by FLS. Then, in a subsequent trial (or, more likely, trials), FLS would have to prove each of those assumptions to have been correct: i.e., it would have to prove infringement and defeat Intel's efforts to prove invalidity. Should, in a subsequent trial, even a single assumption with respect to any patent fail, the damages-only verdict with respect to (at

---

[4]To the extent the parties dispute whether the Court should, following the bellwether trial, enter partial final judgment pursuant to Federal Rule of Civil Procedure 54(b), they will have an opportunity to be heard on that issue after the September trial. What seems incontestable, however, is that the potential for appellate resolution of a portion of this case is far greater with Intel's bellwether approach than it would be with FLS's reverse bifurcation.

[5]It appears that Intel is agreeable to these three patents being the patents selected for the September bellwether trial. (D.I. 639 at 1-2) While Intel has also stated a preference for other combinations of three patents, the Court deems it most appropriate to allow FLS, as the patentholder, to select the three patents to be the subject of the forthcoming trial. (*See* D.I. 639 at 14, 19)

3

least) that patent would become a nullity. (*See* D.I. 639 at 7) (Intel: "If even a single assumption turned out incorrect, the advisory damages verdict would be invalid. . . . [By contrast,] a bellwether would provide certainty on a large portion of the case.") Knowing this, and confident of the unlikelihood FLS would prevail on all the assumptions in subsequent trials, Intel insists that the damages-only verdict would not promote settlement efforts (particularly if the damages-only trial results in a large dollar figure).

While the Court agrees with Intel that this case will be best served by a bellwether trial rather than reverse bifurcation, the Court reaches this conclusion despite rejecting several aspects of Intel's reasoning. The Court is not persuaded that the damages-only trial it contemplated would threaten Intel's constitutional rights, as the Court would not permit different juries to separately resolve any common issues. Also, while the damages-only trial outlined by FLS would involve the September jury hearing from some of the same technical expert witnesses who will also have to testify when liability is tried, this fact does not defeat the efficiencies that could be obtained by reverse bifurcation, as the overlapping witnesses would almost certainly be on the stand at a damages-only trial for just a small fraction of the time they will need to testify at a liability trial.[6]

Nonetheless, for the reasons stated throughout this Memorandum, the Court has determined that the best exercise of its discretion, under the totality of circumstances presented here, is to use the September trial slot to conduct a bellwether trial with respect to liability and

---

[6]The parties dispute which approach would allow the Court to conserve more judicial resources by not having to decide their multiple summary judgment and *Daubert* motions. This disagreement is moot as, by separate opinion and order entered today, the Court has resolved all pending motions.

damages on FLS's '302, '888, and '804 patents.

The Court recognizes that if the bellwether trial (and potential appeal) does not lead to resolution of the case, the parties and the Court could be trying portions of this case for many, many years to come. (*See, e.g.*, D.I. 639 at 18) (FLS characterizing Intel proposal as "blueprint for multiplying this case into many trials, separated by many appeals, delaying any final resolution for over a decade and accumulating far more work for everyone along the way")[7] To this, all the Court can say is that it will continue to be receptive to reasonable suggestions as to how to manage this case most efficiently, in light of its overwhelming size and complexity.

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

1. The jury trial in September will address issues of liability and damages with respect to FLS's '302, '888, and '804 patents.

2. No later than August 7, FLS shall reduce its asserted claims to no more than a total of ten, to be selected from the three patents to be tried in September. Proceedings with respect to all non-selected claims of these three patents (to the extent presently asserted), and all asserted claims of all the other patents-in-suit, shall be stayed until after the September trial.

3. No later than August 14, Intel shall reduce its prior-art based invalidity arguments (anticipation or obviousness) to no more than three per patent for the '302, '888, and '804 patents.

July 31, 2017
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[7]The Court has not made a decision as to whether trials on the remaining patents-in-suit should be scheduled during the pendency of any post-trial proceedings or appeal with respect to the bellwether trial. The parties will have an opportunity to present their positions on that question after the September trial.